CITY OF RIVERVIEW v SIBLEY LIMESTONE

Docket No. 257337. Submitted March 14, 2006, at Detroit. Decided April 18, 2006, at 9:05 a.m. Leave to appeal sought.

Sibley Limestone was found responsible by the 27th District Court, Randy L. Kalmbach, J., of violating a city of Riverview ordinance that prohibits blasting without a permit. The blasting occurred in the city of Trenton near its border with Riverview. On appeal, the Wayne Circuit Court, Craig S. Strong, J., affirmed, ruling that a home rule city can exercise power beyond its own boundaries in unusual circumstances, that the ordinance was valid, and that the district court did have jurisdiction and venue to hear the civil infraction. The defendant appealed.

The Court of Appeals *held*:

1. The circuit court erred when it determined that the plaintiff had authority to adopt an ordinance regulating the defendant's blasting operations outside the plaintiff's boundaries pursuant to MCL 117.4i(d). That statute does not authorize the regulation or prohibition of a trade outside a city's boundaries, such as this defendant's quarrying operation. The Legislature has not expressly or impliedly authorized the plaintiff's attempt to exercise authority outside its boundaries in a compulsive, rather than consensual, manner.

2. Although the 27th District Court has jurisdiction over the civil infraction action, the proper venue for this case is the 33rd District Court because the civil infraction occurred in the 33rd Judicial District. However, no order, judgment, or decree shall be void or voidable solely on the ground of improper venue, MCL 600.1645.

Reversed.

MUNICIPAL CORPORATIONS — POLICE POWERS — BOUNDARIES.

As a general rule, a municipality's police powers may only be exercised within its boundaries, absent statutory or special authority.

*Pentiuk, Couvreur & Kobiljak, P.C.* (by *Randall A. Pentiuk* and *Kerry L. Morgan*), for the plaintiff.

*Couzens, Lansky, Fealk, Ellis, Roeder & Lazar, P.C.* (by *Bruce J. Lazar*), for the defendant.

Amici Curiae:

*Howard & Howard Attorneys, P.C.* (by *Wallace G. Long*), for the city of Trenton.

*Lewis & Munday, P.C.* (by *Darice E. Weber*), for The Detroit Edison Company.

Before: OWENS, P.J., and KELLY and FORT HOOD, JJ.

PER CURIAM. Defendant appeals by leave granted a circuit court order affirming the district court's finding that defendant was responsible for a civil infraction for violating an ordinance that prohibits blasting without a permit. We reverse.

Defendant operates a quarry in the city of Trenton that runs along Trenton's border with plaintiff.[1] Plaintiff's police chief, Patrick Knight, issued a civil infraction citation to defendant for blasting without a permit, contrary to Riverview ordinances § 22-173 and § 22-191 of article V of plaintiff's code. Defendant pleaded not responsible and requested a formal hearing in the district court. Defendant moved in the district court to dismiss the citation on the grounds that it conducted its activities solely within Trenton. It argued that plaintiff could not lawfully exercise its authority beyond its boundaries and that the 27th District Court was not the proper venue to adjudicate civil infractions occurring in Trenton.[2]

---

[1] We granted Trenton's and Detroit Edison's motions to file briefs amicus curiae. Detroit Edison is the alleged owner of the land on which defendant operates its quarry.

[2] An earlier circuit court lawsuit brought by plaintiff against defendant regarding blasting operations at the quarry had been dismissed without

The district court concluded that the effect of the blasting on plaintiff's real estate and citizens fell within the scope of plaintiff's ordinance, which was presumed valid and constitutional, and it found that venue was proper. It conducted a formal hearing on the civil infraction citation. Chief Knight testified that he felt and heard a blast at his home. He later ascertained that the blasting occurred at its scheduled time. After verifying with plaintiff's engineering office that defendant did not procure a blasting permit, he issued a civil infraction citation to the quarry. He was unaware of any possible source of the blast other than the quarry operation. The district court found by a preponderance of the evidence that defendant committed a civil infraction under the ordinance. It assessed fines and costs of $150 against defendant, but stayed payment pending appeal.

On appeal, the circuit court affirmed the district court's decision. It relied on *Coldwater v Tucker*, 36 Mich 474 (1877), to find that a home rule city can exercise power beyond its own boundaries in unusual circumstances. At issue in *Coldwater* was whether a city, which had no express authority in its charter to execute drainage works outside its borders, but had general authority over drainage, could enter into a contract for drainage works outside its borders to provide an adequate outlet for sewage. Our Supreme Court held that the contract was not repugnant to the charter's purpose or beyond the city's corporate powers. *Id.* at 480. It recognized:

> The general doctrine is clear that a municipal corporation cannot usually exercise its powers beyond its own

---

prejudice. The dismissal order stated that a court-appointed monitor had approved a blasting design and operational plan for defendant, but authorized the monitor to continue overseeing defendant's operations and to modify the plan before submitting a final report to the parties.

limits. If it has in any case authority to do so, the authority must be derived from some statute which expressly or impliedly permits it. [*Id.* at 477-478.]

Defendant first argues that the circuit court erred when it determined that plaintiff had authority to adopt an ordinance regulating defendant's blasting operations outside plaintiff's boundaries pursuant to MCL 117.4i(d). We agree.

Issues of statutory interpretation are reviewed de novo. *Ford Motor Credit Co v Detroit,* 254 Mich App 626, 628; 658 NW2d 180 (2003). The applicability of a statute is also a question of law that is reviewed de novo. *Adams Outdoor Advertising, Inc v City of Holland,* 463 Mich 675, 681; 625 NW2d 377 (2001). The rules governing statutory interpretation apply with equal force to a municipal ordinance. *Gora v City of Ferndale,* 456 Mich 704, 711; 576 NW2d 141 (1998). A municipal corporation has no inherent power and must derive its authority from the state. *Bivens v Grand Rapids,* 443 Mich 391, 397; 505 NW2d 239 (1993). An ordinance of a home rule city is valid only if it is consistent with the powers granted by constitution or statute and if it falls within the scope of authority in the city's charter. *Id.* Const 1963, art 7, § 22 grants the electors of each city the power to adopt and amend its charter and grants the city the power to adopt ordinances relating to municipal concerns, property, and government, subject to law. The dispositive question is whether the pertinent ordinances are consistent with plaintiff's express or implied powers conferred by the Home Rule City Act, MCL 117.1 *et seq.* The challenged ordinance, § 22-191,[3] states in relevant part:

_____

[3] Also relevant are § 22-193(a), which provides for the payment of permit fees to plaintiff's general fund; § 22-173, which provides that failure to obtain a blasting permit results in a civil infraction; and

It shall be unlawful for any person, firm, entity, corporation or association to engage in any blasting operations within the city *or located outside of the city* whose operations affects any real property or persons located within the city, without having first secured a permit from the city council.

Defendant argues that the challenged ordinance was not permitted under MCL 117.4i, which provides in part:

Each city may provide in its charter for 1 or more of the following:

\* \* \*

(d) The *regulation* of trades, occupations, and amusements within city boundaries, if the regulations are not inconsistent with state or federal law, and the *prohibition* of trades, occupations, and amusements that are detrimental to the health, morals, or welfare of the inhabitants of that city. [Emphasis added.]

The circuit court essentially ruled that plaintiff's ordinance should be presumed valid under this statute and that the authority to regulate a trade outside plaintiff's boundaries could be implied from the statute's "prohibition" clause. Laws concerning a city must be liberally construed in its favor. Const 1963, art 7, § 34; *Bivens, supra* at 400. But the primary purpose of statutory interpretation is to give effect to legislative intent. *Casco Twp v Secretary of State,* 472 Mich 566, 571; 701 NW2d 102 (2005). Legislative intent is determined by reviewing the language of the statute. *Id.* When the language is unambiguous, we presume the Legislature intended the meaning plainly expressed. *Id.* A statute is

---

§ 22-194, which provides, "If approved by the city council, subject to the regulations of this section and the provisions of the Fire Prevention Code (MCL 29.1 et seq.), and the Explosives Act of 1970 (MCL 29.41 et seq.), a permit shall be granted to the applicant. . . ."

construed by considering both the plain meaning of a critical word or phrase and its placement, purpose, and grammatical context within the statute. *Sun Valley Foods Co v Ward,* 460 Mich 230, 237; 596 NW2d 119 (1999). Every word, phrase, and clause must be given effect. *Shinholster v Annapolis Hosp,* 471 Mich 540, 549; 685 NW2d 275 (2004).

Here, it is clear that the "regulation" clause in MCL 117.4i(d) only authorizes the regulation of a trade within a city's boundaries. Had the Legislature intended to allow regulation outside a city's boundaries, it could have used the phrase "within or without," as it has done when enacting other statutes. See *Sabaugh v Dearborn,* 384 Mich 510, 517-518; 185 NW2d 363 (1971) ("within or without" language in the Revenue Bond Act, at MCL 141.104, construed as permitting a city to acquire public works outside the state). Because the statute does not confer the authority to regulate a trade outside a city's boundaries, as a matter of law there is no basis for implying any power necessary to carry out the regulatory function.

Furthermore, the "prohibition" clause is not relevant to plaintiff's permit ordinance because the ordinance does not prohibit any particular trade, but rather requires a permit, subject to specified regulations, to engage in a blasting operation. To the extent that the circuit court construed the "prohibition" clause as impliedly authorizing a city to "regulate" a trade outside its boundaries, its construction was incorrect. An absolute prohibition is an extreme form of regulation. See *Grocers Dairy Co v Dep't of Agriculture Director,* 377 Mich 71, 76; 138 NW2d 767 (1966); *Van Buren Twp v Garter Belt, Inc,* 258 Mich App 594, 609-611, 619; 673 NW2d 111 (2003). If the "prohibition" clause were construed to permit lesser forms of regulation such as

permitting, then the "regulation" clause would be nullified. Moreover, because prohibition is a form of regulation, *Van Buren Twp, supra,* the prohibition must also take place within a city's boundaries and comply with state and federal law. It follows, as a matter of law, that MCL 117.4i(d) does not provide the necessary authority for plaintiff to regulate defendant's blasting operation, which is not within plaintiff's boundary.[4]

Legal texts and case authority from other jurisdictions do not support a different interpretation of Michigan law. The general rule appears to be that a municipality's police powers may only be exercised within its boundaries, absent statutory or other special authority. See 56 Am Jur 2d, Municipal Corporations, Counties, & Other Political Subdivisions, § 395, p 435, and 6A McQuillian, Municipal Corporations (3d ed), § 24.57, pp 163-164.[5] In *Almquist v City of Biwabik,* 224 Minn 503,

---

[4] Plaintiff's claim that it has independent authority to enact the ordinance under MCL 117.3 is not properly before this Court because this claim was not argued in the circuit or the district court. Although an appellee need not file a cross-appeal to argue alternative reasons to support a judgment, *Middlebrooks v Wayne Co,* 446 Mich 151, 166 n 41; 521 NW2d 774 (1994), to properly preserve a claim for appeal, the reasons must have been presented to the lower court, *FMB-First Michigan Bank v Bailey,* 232 Mich App 711, 718; 591 NW2d 676 (1998). Nevertheless, nothing in the general language of MCL 117.3 mandates that a home rule city must regulate a trade within or without its borders. This subject matter is addressed in MCL 117.4i(d), which designates the regulation as a permissive charter provision. A specific statutory provision controls over a general statutory provision. *Jones v Enertel, Inc,* 467 Mich 266, 270; 650 NW2d 334 (2002). Hence, as a matter of law, MCL 117.4i(d) is the controlling statute.

[5] Plaintiff's reliance on *Huron Portland Cement Co v Detroit,* 355 Mich 227; 93 NW2d 888 (1959), aff'd 362 US 440 (1960), is misplaced because neither our Supreme Court nor the United States Supreme Court addressed the issue of extraterritorial authority. Similarly, the amicus curiae Trenton's reliance on *Vulcan Materials Co v City of Tehuacana,* 369 F3d 882 (CA 5, 2004), is misplaced. The issue in that case was whether a city ordinance prohibiting mining activities within the city constituted a public taking. We

507; 28 NW2d 744 (1947), the Minnesota Supreme Court rejected the notion that the failure to specifically deny a power was enough to authorize it by implication. The court relied on an earlier Minnesota case, *Duluth v Orr,* 115 Minn 267; 132 NW 265 (1911), involving a city ordinance that regulated explosive materials within the city and within one mile of the city. A constitutional provision empowered the city council to frame a charter "for its own government," and the general grant of authority provided by statute for the city stated that "nothing in this section shall authorize a change of boundaries." *Id.* at 269. In finding the ordinance invalid, the Minnesota Supreme Court stated, in part:

> The right given to the people within prescribed territorial limits to adopt a complete municipal code does not warrant the assumption by them of power over territory and people beyond those limits, even though the control of such territory and people would be convenient and gratifying to the people within the city. The practical difficulties involved in the assumption by cities of such power are apparent. Innumerable conflicts in authority would inevitably follow. Such a result is not reasonably within the purview of the constitutional amendment. The ordinance, with the violation of which the defendant was charged, is, as to territory beyond the city limits, invalid. [*Id.* at 270.]

*City of Eugene v Nalven,* 152 Or App 720; 955 P2d 263 (1998), involved the validity of a city ordinance compelling residents outside its boundaries to connect to its sewer system. In finding the ordinance invalid, the court stated, "although municipal authority gener-

---

disagree that the Fifth Circuit Court of Appeals tacitly acknowledged that a city can regulate activity beyond its borders. The court identified the ordinance in question as one "forbidding quarrying or mining activities within the City limits." *Id.* at 885 n 2. It did not purport to address whether the city had statutory authority to regulate land outside its boundaries.

ally may derive from express or implied grants from the state, the power to act beyond municipal boundaries may not be implied and instead must be based on an expressed—indeed, on a *'clearly* expressed'—conferral of authority." *Id.* at 725 (emphasis in original).

In *GTE Northwest Inc, v Oregon Pub Utility Comm*, 179 Or App 46; 39 P3d 201 (2002), the Oregon Court of Appeals drew a distinction between coercive authority and consensual transactions when reviewing a county's authority to provide telecommunications beyond its geographical borders. It found that the nature of the county's extraterritorial activity, and not the territorial boundaries themselves, was the relevant factor in determining whether authority could be exercised beyond the boundaries. *Id.* at 58. Quoting *DeFazio v Washington Pub Power Supply Sys,* 296 Or 550, 582-583; 679 P2d 1316 (1984), the court stated, in part:

> [T]he concept of "extramural power," power "outside the walls," is relevant when a city undertakes to assert coercive authority over persons or property outside its boundaries. It has little relevance to a city's contracts or other consensual transactions in goods or services, although an exercise of eminent domain outside city limits, for instance, would be an exercise of extramural power. [*GTE Northwest Inc, supra* at 58.]

Although the standards applied in Oregon are not controlling with respect to how Michigan's home rule city law is construed, *GTE Northwest Inc* provides persuasive reasoning regarding the importance of distinguishing between a consensual and a coercive exercise of municipal authority outside the municipality's borders. Moreover, it distinguishes this case from *Coldwater, supra* at 477-478, on which the circuit court relied to find that plaintiff had statutory authority under MCL 117.4i to regulate blasting operations out-

side its borders. Plaintiff may have a legitimate concern regarding the effect on its own property and residents caused by blasting operations outside its borders even though the effect does not constitute a direct, tangible intrusion over the property. See *Adams v Cleveland-Cliffs Iron Co,* 237 Mich App 51, 65-67; 602 NW2d 215 (1999) (matters of noise and vibration are not direct, tangible invasions that will allow a recovery in trespass, but may be recoverable in nuisance). But unlike *Coldwater,* plaintiff attempted to exercise authority outside its boundaries in a compulsive, rather than consensual, manner. The Legislature has not expressly or impliedly authorized this type of action. Hence, § 22-191 of plaintiff's code is facially invalid to the extent that it attempts to regulate blasting operations outside the city.[6]

Defendant next argues the 27th District Court lacked jurisdiction over the civil infraction action because it occurred in Trenton, and either a change of venue or dismissal should have been ordered. We disagree.

Jurisdiction is a question of law that is reviewed de novo. *Bass v Combs,* 238 Mich App 16, 23; 604 NW2d 727 (1999). A trial court's decision whether venue should be changed is reviewed for clear error. *Id.* at 19. "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake has been made." *Massey v Mandell,* 462 Mich 375, 379; 614 NW2d 70 (2000). An issue of statutory construction is reviewed de novo. *Ford Motor Credit Co, supra* at 628. Jurisdiction is a court's power to act and its authority to hear and decide a case. *Trost v Buckstop Lure Co, Inc,* 249 Mich App 580, 586; 644 NW2d 54 (2002). If a court lacks subject-matter jurisdiction, its acts and proceedings are invalid. *Id.* "The district court has jurisdiction

---

[6] Because of our resolution of this issue, defendant's argument that plaintiff failed to prove a prima facie case is moot.

over civil infraction actions." MCL 600.8301(2). Because this is a civil infraction action, jurisdiction was established. The 27th District Court had the power to act, even if it committed an error in the exercise of jurisdiction. *Trost, supra* at 586.

MCL 600.8703(4) governs the commencement of a municipal civil infraction action, and provides in relevant part:

> The place specified in the citation for appearance shall be the court referred to in subsection (2) that has territorial jurisdiction of the place where the municipal civil infraction occurred. Venue in the district court is governed by section 8312.

The venue statute, MCL 600.8312(6), provides in part:

> Venue in civil infraction actions shall be determined as follows:

> * * *

> (c) In a district of the third class, venue shall be in the political subdivision where the civil infraction occurred, except that when the violation is alleged to have taken place within a political subdivision where the court is not required to sit, the action may be heard or an admission entered in any political subdivision within the district where the court is required to sit.

The 27th Judicial District is a third-class district consisting of Wyandotte and Riverview. MCL 600.8121(12). The 33rd Judicial District, which includes Trenton, is also a third-class district. MCL 600.8121(19). Hence, the governing provision was MCL 600.8312(6)(c). The charged civil infraction was based on the following provision in § 22-173 of plaintiff's code:

> Any person, firm, corporation, association or entity is subject to prosecution and suit under this article who engages in an impulse noise, vibration, or blasting operation and:

* * *

> (3) Fails to obtain any required permit . . . .

Thus, it was the operation (without a required permit) involving impulse noise, vibration, or blasting that could be prosecuted by plaintiff. Because venue was controlled by where the civil infraction occurred, the proper inquiry should have been the location of the operation (without the required permit). Because defendant's operation was situated in Trenton, the 27th District Court was not the proper venue. Nevertheless, MCL 600.1645 provides that "[n]o order, judgment, or decree shall be void or voidable solely on the ground that there was improper venue." See also *Bass, supra* at 22. Therefore, the instant issue, standing alone, does not afford a basis for relief.

Defendant next argues that the provision in § 22-216(2) of plaintiff's ordinances for class A permit inspections contravenes the prohibition against unreasonable searches under the Fourth Amendment. Because defendant failed to brief the relevancy of its Fourth Amendment issue to the civil infraction citation, we decline to address this issue. Although there are instances in which a reviewing court may overlook preservation requirements, *Steward v Panek,* 251 Mich App 546, 554; 652 NW2d 232 (2002), a party's failure to brief an issue that necessarily must be reached precludes appellate relief. *Roberts & Son Contracting, Inc v North Oakland Dev Corp,* 163 Mich App 109, 113; 413 NW2d 744 (1987).

Reversed.